UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18-CV-138-TBR

FULTON COUNTY, KENTUCKY; and
FULTON COUNTY FISCAL COURT, PLAINTIFF

v.

UNDERWRITERS SAFETY AND CLAIMS, INC.;
MICHAEL P. GILLIGAN;
McINTYRE, GILLIGAN AND MUNDT, INC.;
BELFOR USA GROUP, INC. d/b/a BELFOR
PROPERTY RESTORATION;
BELFOR ENVIRONMENTAL, INC.; and
S. M. LAWRENCE COMPANY, INC., DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Remand. (R. 6). Fully briefed, these matters are ripe for decision. For the reasons stated herein, the Plaintiff's Motion to Remand is HEREBY GRANTED.

BACKGROUND

Tornados damaged Fulton County Detention Center on March 9, 2017. Fulton County's Judge/Executive, Jim Martin, filed a claim with the jail's insurance carrier, Kentucky Association of Counties All-Lines Trust Fund ("KALF"). Underwriters Safety & Claims, Inc. ("USC"), a Kentucky corporation, handles claims adjustment and management services on KALF's behalf. USC assigned claims adjustment and management of the jail's claim to the Kentucky Corporation McIntyre, Gilligan, and Mundt, Inc. (MGM). Michael P. Gilligan, from MGM handled the claim.

According to the Complaint, at their first meeting, Gilligan "assumed full responsibility for making all arrangements for the repair and restoration of the Fulton County Jail," and told Judge

1

Martin that "he and MGM would take care of everything to the get the jail repaired and restored, and that Judge Martin would not have to worry about anything." (Pl.s' Compl., ¶ 19) He also told Judge Martin at this first meeting that the repairs might be performed by Belfor, a contractor from Tennessee. (*Id.* at ¶ 20) Jeff Johnson, a Fulton County Fiscal Court employee also at the meeting, asked if the contractor, being from Tennessee, was familiar with all applicable Kentucky Administrative regulations surrounding jails and their construction. (*Id.* at ¶ 21) Gilligan said Belfor was, having worked previously on another Kentucky jail. (*Id.* at ¶ 23)

After the first meeting between Gilligan and Judge Martin, KALF hired Belfor—allegedly on Gilligan's recommendation—to repair the jail. (*Id.* at ¶ 25) Belfor, in turn, hired subcontractor S. M. Lawrence Company Inc. ("SM Lawrence") to complete the HVAC work.

Once the project was underway, Plaintiffs claim that Judge Martin, nor any other Fulton County Fiscal Court employee, had anything to do with the construction process in any way. (Affidavit of Judge Martin ¶ 8) Nothing was ever submitted for their approval or consideration. Instead, "Gilligan, MGM, and USC took full charge of all arrangements and oversight of the project." (Id. at ¶¶ 6-7)

Towards the project's end, Gilligan notified the Fulton County Fiscal Court that the project was nearing completion. Upon hearing the news, Johnson inspected the repairs and discovered that the smoke evacuation system had not been restored. Kentucky Administrative Regulation 500 KAR 13:010 § 7(4) requires that "in each area in which a prisoner may be confined, there shall be an emergency smoke control system activated by smoke detectors and operated by emergency power." Thus, inmates could not be housed in the areas in which the smoke evacuation system had failed to be restored. Johnson brought the problem to Gilligan's attention. (Pl.s' Compl., ¶ 29)

Two weeks Later, Gilligan allegedly met with Judge Martin and told him that the jail had no smoke evacuation systems prior to the damage. (*Id.* at ¶ 30) In response, Judge Martin found the jail's blueprints, which Plaintiffs' claim indicated that the prison indeed had smoke evacuation systems prior to the damage. (*Id.*) In October of 2017, Judge Martin presented the Blue prints to all those involved in the project, including Gilligan. (*Id.* at ¶ 32) At this point Gilligan allegedly admitted that the jail, in fact, had smoke evacuation systems prior to the damage and that they should have been restored by SM Lawrence. (*Id.* at ¶¶ 35 & 36) At some point thereafter, the blue prints were lost, and Gilligan again insisted that the jail never had smoke evacuation systems. (*Id.* at ¶¶ 42 & 43) Judge Martin then found a second set of blue prints, at which point Gilligan again allegedly admitted that the smoke evacuation systems should have been restored. (*Id.* at ¶ 47) The smoke evacuation systems were finally restored in mid to late June of 2018. (*Id.* at ¶ 49)

In June of 2018, Plaintiffs brought negligence, breach of contract, unfair claims settlement practices, and fraud claims against Gilligan, MGM, USC, Belfor, and SM Lawrence in Fulton Circuit Court for lost profits during the 11 ½ month delay caused by the failure to restore the smoke evacuation systems. USC timely removed to this Court in September, alleging that the insurance adjusters, Gilligan, MGM, and USC, had been fraudulently joined. Plaintiffs now move to have the case remanded back to Fulton Circuit Court, arguing that they have colorable negligence claims against the insurance adjusters because they "assumed duties beyond the scope of their role as adjusters." (Pl.s' Mot. to Remand, p. 11) Plaintiff's argue further that remand is required because they have alleged colorable breach of contract, fraud, and negligent misrepresentation claims against the adjusters under Kentucky law. USC responds that the Plaintiffs have no colorable negligence claims against the non-diverse Defendants because insurance adjusters owe no duty to insureds under Kentucky law, and, in any event, the adjusters here never assumed a duty beyond

3

the scope of those already covered by the contract with KALF. (USC's Resp., p. 80) Making a specific argument addressed to each one, USC goes on to contend that the Complaint fails to state a colorable claim against the adjusters under any of its remaining causes of action.

STANDARD

In this case, the parties concede that complete diversity is not evident from the Complaint. However, the removing defendants allege that the non-diverse defendants were fraudulently joined by the Plaintiffs and should not ruin complete diversity in this matter. Consent for removal is not required of fraudulently joined defendants. *See United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1009 n.2 (3rd Cir. 1987); *Anderson v. Merck & Co.*, 417 F.Supp.2d 842, 845 n.3 (E.D.Ky. 2006). A defendant is fraudulently joined if there is "no reasonable basis for predicting that state law might impose liability on the facts involved." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Bobby Jones Garden Apartments Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)). *See also Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999); *Sprowls v. Oakwood Mobile Homes, Inc.*, 119 F.Supp. 2d 694, 695-96 (W.D.Ky. 2000). In the Sixth Circuit, the test for fraudulent joinder is applicable in three situations: (1) where there is no colorable basis for a claim against the nondiverse defendant; (2) when a plaintiff engages in outright fraud in pleading jurisdiction allegations; and (3) when a plaintiff joins a defendant who does not share joint, several, or alternative liability with a diverse defendant, nor a nexus of connectivity between the claims. *Jerome-Duncan, Inc. v. Auto-by-Tel, LLC*, 176 F.3d 904 (6th Cir. 1999). Here, the removing defendant alleges that there is no colorable basis for a claim against the non-diverse defendants— the insurance adjusters. In evaluating claims of fraudulent joinder, the Court must initially evaluate

all the factual allegations in the Plaintiffs' state court pleadings in the light most favorable to the Plaintiffs. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983). If the claims against non-diverse defendants are properly arguable under state law with some possibility of success, remand is proper regardless of the likelihood of plaintiff's success on those claims. *See Crowe*, 113 F.3d at 1538.

DISCUSSION

The standard to establish fraudulent joinder is a high one. It is even higher than the standard required by a motion to dismiss. *See Cordle v. Merck & Co., Inc.*, 405 F. Supp. 2d 800, 803 (E.D. Ky. 2005) (citing *Little v. Purdue Pharma*, L.P., 227 F. Supp. 2d 838, 845-46 (S.D. Ohio 2002)). It is so high, that the removing party must demonstrate that "there is no 'glimmer of hope' that [the plaintiff] could prevail against the non-diverse defendants in state court." *Fugate v. Babcock & Wilcox Conversion Servs.*, LLC, No. 5:14-CV-00172-TBR, 2015 U.S. Dist. LEXIS 50600, at *5 (W.D. Ky. Apr. 17, 2015) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999)). With this in mind, the Court turns first to Plaintiffs' negligence claims.

Plaintiffs' negligence claims against the non-diverse Defendants raise two issues: First, whether, under Kentucky law, insurance adjusters owe *any* duty of care to insureds. Second, whether the adjusters here assumed a duty beyond those covered by contract.

A. Kentucky Law does not Entirely Immunize Insurance Adjusters from Suit by the Insured.

Relying on *Ring's Crossroads Mkt., Inc. v. Cincinnati Indem, Co.* Case No. 1:14-CV-00105-DJH, 2015 U.S. Dist. LEXIS 100962 (W.D. Ky. Aug. 3, 2015), USC argues that "insurance

adjusters owe no contractual *or other duty* to the insured." (USC's Resp., p. 8) (emphasis added). The Court is not convinced that *Ring's Crossroads* extends as far as USC suggests.

In *Rings Crossroads*, an insured sued the insurance company and the adjuster that denied the insured's fire loss claim. The insured brought bad faith, Kentucky Consumer Protection Act, and negligence claims against the insurance adjuster. In deciding whether the insurance adjuster had been fraudulently joined, Judge Hale determined that "Kentucky law unambiguously forecloses actions against adjusters for bad faith." *Id.* at *6. Judge Hale also found that the insured had no colorable claim against the adjuster under the Kentucky Consumer Protection Act based on a lack of privity. *Id.* at *8. Finally, addressing the negligence claim, Judge Hale held that "individual adjusters are only agents of the insurer," and went on to find that the plaintiff had "identified no basis under Kentucky law to suggest that [the adjuster] owed [the insured] a duty of care." *Id.* at *10 (citing *Brown v. Noland Co.*, 403 S.W.2d 33, 36 (Ky. 1966)).

Despite the Plaintiffs' arguments to the contrary, the Court finds Judge Hale's interpretation of Kentucky law in *Rings Cross Roads* sound. Thus, USC is correct in that just like the adjuster in *Rings Crossroads*, Gilligan was the insurer's agent—not the insured's. Therefore, Gilligan's duties—as an insurance adjuster—ran up through the two contracts and, ultimately, only to KALF. Gilligan owed no duty to Fulton County Fiscal Court that was already owed to KALF via the contract to adjust the claim.

However, this is not to say Kentucky law precludes Gilligan from owing *any* duty to the Fulton County Fiscal Court. *Rings Crossroads* does not, despite USC's position, go so far as to suggest that insurance adjusters "owe no contractual *or other duty to the insured.*" (USC's Resp., p. 8) (emphasis added). Such a conclusion would immunize adjusters from suit by the insured in effectively every circumstance. Judge Hale's *Ring's Crossroad* Opinion does not support such a

conclusion, nor does any other in the Western District or Kentucky state court of which this Court is aware. Judge Hale dismissed the insured's negligence claim in *Ring's Crossroads* because the insured identified no basis under Kentucky law to suggest the adjuster owed the insured a duty of care beyond those duties already assumed—as an insurance adjuster—and thus owed to the insurer. By contrast and discussed further below, the Plaintiffs here allege that Gilligan violated a duty owed to them beyond, and independent from, his duties assumed as and insurance adjuster. The Court is not convinced that Kentucky law immunizes insurance adjusters from liability based on assumed extracontractual duties so as to render the Plaintiffs' negligence claims hopeless.

B. USC has Not Demonstrated that the Adjusters Assumed no Extracontractual Duties.

USC argues that "[i]n any event, Gilligan did not assume any duty to exercise reasonable care to perform the repair of the Jail that was in addition to his contractual duty to adjust the claim." (USC's Resp., P. 8) The Court disagrees.

USC compares the instant matter to *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575 (Ky. 2004). The comparison is incorrect. In *Presnell* a sub-contractor sued a construction management company that was hired by a commercial building owner to oversee the building's renovation. In dismissing the subcontractor's negligence claim against the construction management company, The Kentucky Supreme Court stated, as it has in the past, that "[a]lthough privity is no longer required to maintain a tort action, 'one who is not a party to the contract or in privity thereto may not maintain an action for negligence which consists merely in the breach of the contract.'" *Presnell* 134 S.W.3d at 579 (quoting *Penco, Inc. v. Detrex Chemical Industries, Inc.*, Ky. App., 672 S.W.2d 948, 951 (1984)). The *Presnell* Court went on to hold that Because "[the subcontractor's] ordinary negligence claim for economic loss resulting from [the management company's] alleged negligent supervision of the Project does not articulate a duty

7

independent of [the management company's] contractual duties, however, I would hold it is barred by the economic loss rule." In other words, the *Presnell* Court held that the subcontractor's negligence claim failed because the duties allegedly violated by the management company were owed to the building owner via contract. USC has not demonstrated that to be the case here.

Here, the Plaintiffs allege that Gilligan "assumed full responsibility for making all arrangements for the repair and restoration of the Fulton County Jail," and told Judge Martin that "he and MGM would take care of everything to the get the jail repaired and restored, and that Judge Martin would not have to worry about anything." (Pl.s' Compl., ¶ 19) Moreover, the Complaint alleges—and USC concedes—that "Gilligan arranged for an independent contractor to restore the jail, defendant Belfor." (USC's Resp., P. 8). Despite USC's insistence, the Court is not convinced these duties were covered by contract and owed to KALF. These duties concern overseeing the actual restoration project. Nowhere in the Claims Service Agreement between USC and KALF, which specifically lists the adjusters' duties and responsibilities in managing and adjusting claims, does it mention restoration or construction management. (*See* Pls.' Mot. to Remand, Ex. C) Nowhere in the Claims Services Agreements between the USC and KALF does it mention arranging for contractors. Instead, the agreements list duties one would expect insurance adjusters to undertake in performing services for insurance companies, such as: receiving claims reports, conducting claims investigations, determining the credibility of claims, and making recommendations regarding claims strategy. (Pls.' Mot. to Remand, Ex. C) Therefore, based on the allegations in the Complaint and the Claims Services Agreements between USC and KALF, the Court cannot say that there is no glimmer of hope that Gilligan, and by extension the other adjusters, did not assume a duty beyond the contractual ones owed to KALF. Further, USC has not demonstrated, or even attempted to demonstrate, that those duties were not breached, or that the

breach did not cause the Plaintiffs' alleged damages. Thus, this Court need not proceed to Plaintiffs' other claims against the non-diverse defendants. The Defendants have already failed to carry their heavy burden. They were required to demonstrate that there is no reasonable basis for predicting that state law might impose liability on the facts involved. There is a reasonable basis for predicting that Kentucky law might impose liability based on negligence. The case is remanded.

CONCLUSION

In Sum, Kentucky law does not immunize insurance adjusters from suit by an insured based on assumed duties independent from those owed to the insurer. USC has not demonstrated that Gilligan did not assume duties on behalf of the adjusters beyond those owed as insurance adjusters to the insurer or those covered by contract. Therefore, the Court cannot find that the Plaintiffs' negligence claims against the adjusters as non-divers parties have no glimmer of hope. The Court notes that with its Opinion it does not comment on the Plaintiffs' likelihood of success, only that USC has failed to demonstrate that the possibility has no basis in reason or law. As such, USC has failed to prove fraudulent joinder, and the Court ORDERS AS FOLLOWS:

Plaintiffs' Motion to Remand, (R. 6), is HEREBY GRANTED. This matter is REMANDED back to FULTON COUNTY CIRCUIT COURT, and this case is STRICKEN from the Court's active docket.

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**
January 2, 2019

cc. Counsel of Record